NO. 25-30293

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

**Carla White,**

Plaintiff-Appellant

**v.**

**North Louisiana Criminalistics Laboratory,**

Defendant-Appellee

---

On Appeal from the United States District Court
For the Western District of Louisiana, Shreveport Division
Civil Docket No. 5:21-cv-01850
The Honorable S. Maurice Hicks, Jr., Presiding

---

**ORIGINAL BRIEF OF APPELLEE,
NORTH LOUISIANA CRIMINALISTICS LABORATORY**

---

Submitted by:

Nichole M. Buckle, Bar No. 32113
Carmouche, Bokenfohr, Buckle & Day, PLLC
One Bellemead Center
6425 Youree Drive, Suite 380
Shreveport, Louisiana 71105
Phone: (318) 629-0014
Fax: (318) 404-1571
nikki@cbbd.law

*Attorney for Defendant-Appellee*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record for Defendant-Appellee certifies, in accordance with Fifth Circuit Rule 28.2.1, that the following persons and entities have an interest in the outcome of this appeal. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**A.    Named Parties**

    **1.**    Carla White, Plaintiff-Appellant

    **2.**    North Louisiana Criminalistic Laboratory, Defendant-Appellee

**B.    Counsel for Plaintiff-Appellant**

Allison Jones
Downer, Jones, Marino & Wilhite, LLC
Shreveport, LA

**C.    Counsel for Defendant-Appellant**

Nichole M. Buckle
Carmouche, Bokenfohr, Buckle & Day, PLLC
Shreveport, LA

**D.    U.S. District Court Judge**

S. Maurice Hicks, Jr.
Western District of Louisiana, Shreveport Division

Signed in Shreveport, Louisiana, on this 27th day of October, 2025.

*/s/ Nichole M. Buckle*
Nichole M. Buckle
Counsel for Defendant-Appellee

ii

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fifth Circuit Rule 28.2.3, counsel for Defendant-Appellee submits that oral argument will not aid the court in this matter. This case does not involve complex issues of fact or law, and the record contains clear and unequivocal support for the rulings of the District Court.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..................................................................ii

STATEMENT REGARDING ORAL ARGUMENT ......................................................iii

TABLE OF CONTENTS ............................................................................................ iv

TABLE OF AUTHORITIES ....................................................................................... vi

STATEMENT OF THE CASE ..................................................................................... 1

    I.     Factual Background ........................................................................... 1

    II.    Motion for Summary Judgment ......................................................... 5

    III.   District Court's Ruling ...................................................................... 7

SUMMARY OF THE ARGUMENT ............................................................................ 10

ARGUMENT ......................................................................................................... 11

    I.     Standard of Review ......................................................................... 11

    II.    The District Court Correctly Dismissed Plaintiff's Gender-Based
         Discrimination Claim ..................................................................... 11

         A.    Legal Standard ..................................................................... 11

         B.    Plaintiff Failed to Establish a *Prima Facie* Case of Gender-
               Based Discrimination .................................................... 13

               i.     Plaintiff Was Not Replaced by a Male ................................ 13

               ii.    Plaintiff Was Not Treated Differently than Similarly
                      Situated Comparators ........................................... 15

         C.    Defendant Articulated a Legitimate, Non-Discriminatory
               Reason for Plaintiff's Termination, and There is No Evidence
               of Pretext.................................................................. 17

II.    The District Court Correctly Dismissed Plaintiff's Retaliation Claim ... 23

    A.  Legal Standard .................................................................................. 23

    B.  Plaintiff Failed to Establish a *Prima Facie* Case of Retaliation ........... 24

    C.  Defendant Articulated a Legitimate, Non-Discriminatory Reason for Plaintiff's Termination, and There is No Evidence of Pretext.... 27

CONCLUSION ........................................................................................... 27

CERTIFICATE OF SERVICE ..................................................................... 28

CERTIFICATE OF COMPLIANCE ........................................................... 29

# TABLE OF AUTHORITIES

**Statutes:**

Civil Rights Act of 1991 ................................................................................ 5

Fed. R. Civ. P. 56(c) ............................................................................... 11, 25

Fifth Circuit Rule 28.2.3 ...............................................................................iii

42 U.S.C. § 2000e *et seq* ..............................................................5, 11, 12, 24

**Cases:**

*Alvarado v. Texas Randers,*
492 F.3d 605, 611 (5th Cir. 2007) ............................................................... 12

*Ames v. Ohio Dep't of Youth Servs.,*
303, 145 S.Ct. 1540, 221 L.Ed.2d 929 (2025).............................................. 13

*E.E.O.C. v. LHC Group, Inc.*
773 F.3d 688, 694 (5th Cir. 2014) ............................................................... 11

*Gibbs v. City of Houston,*
2020 WL 76960934 *5 (S.D.Tex 12/28/2020) .............................................. 14

*Guzman v. Allstate Assurance Co.,*
18 F.4th 157, 160 (5th Cir. 2021) ................................................................ 24

*Hagan v. Echostar Satellite, LLC,*
529 F.3d 617, 626 (5th Cir. 2008) ............................................................... 26

*Haire v. Bd. Of Sup'rs of La. State Univ. Agric. & Mech. Coll.,*
719 F.3d 356, 367 (5th Cir. 2013) ............................................................... 23

*Kariuki v. Tarango,*
709 F.3d 495, 505 (5th Cir. 2013) ............................................................... 25

*Lee v. Kansas City Southern Ry. Co.,*
574 F.3d 253, 260 (5th Cir. 2009) ................................................................ 15

*Little v. Liquid Air Corp.,*
37 F.3d 1069, 1071 n.1 (5th Cir. 1994) ....................................................... 11

*Long v. Eastfield College,*
88 F.3d 300, 304 (5th Cir. 1996) ............................................................ 24, 26

*McDonnell Douglas Corp. v. Green,*
411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ............................... 13

*McGruder v. Will,*
204 F.3d 220, 222 (5th Cir. 2000) ............................................................... 11

*Meinecke v. H&R Block,*
66 F.3d 77, 83 (5th Cir. 1995) ..................................................................... 13

*Morris v. Texas Health & Human Servs. Comm.,*
2019 UL 3752762 *11 (S.D. Tex. 08/08/19) ............................................... 26

*Nichols v. Lewis Grocer,*
138 F.3d 563, 566 (5th Cir. 1998) ............................................................... 11

*Okoye v. Univ. of Tex. Houston Health Science Ctr.,*
245 F.3d 507, 512-13 (5th Cir. 2001) ..................................................... 12, 13

*Shackelford v. Deloitte & Touche, LLP,*
190 F.3d 398, 408 (5th Cir. 1999) ............................................................... 24

*Shahrashoob v. Texas A&M Univ.,*
125 F.4th 641, 653 (5th Cir. 2025) ......................................................... 12, 24

*Sharp v. City of Houston,*
164 F.3d 923, 934 (5th Cir. 1999) ............................................................... 14

*Tagliabue v. Orkin, LLC,*
794 Fed.Appx. 389, 394 (5th Cir. 2019) ..................................................... 14

vii

*Turner v. Baylor Richardson Med. Ctr.,*
476 F.3d 337, 343 (5th Cir. 2007) ...................................................................... 11

*Vasquez v. El Paso Cty. Comm. College Dist.,*
177 Fed.Appx. 422, 424 (5th Cir. 2006) ........................................................... 12

## STATEMENT OF THE CASE

### I.    Factual Background

Plaintiff-Appellant Carla White ("Plaintiff" or "White") was hired by the North Louisiana Criminalistics Laboratory ("the Crime Lab") in February 2005 to train as a Firearms Examiner in Shreveport, Louisiana.[1]  She trained under the supervision of Richard Beighley ("Beighley") for two and one-half years, and she was released to work as a full-time Firearms Examiner in August or September of 2008.[2]  In 2018, Plaintiff was also designated as the National Integrated Ballistic Information Network ("NIBIN") Coordinator to serve as the contact person at the Crime Lab for law enforcement agencies.[3]

Effective January 1, 2020, Dr. Joey Jones ("Jones") was hired by the Crime Lab to work alongside System Director Jimmy Barnhill and to fill the role of System Director upon Barnhill's retirement in the fall of 2020.[4]  After Jones began working at the Crime Lab, he recognized that certain employees were not being held accountable and were not satisfactorily performing the duties and responsibilities associated with their job positions.  He attempted to work with all employees to update written policies and procedures and to set clear expectations of the work required.[5]

---

[1] ROA.165,166.
[2] ROA.166, 168.
[3] ROA.170, 171.
[4] ROA.122.
[5] ROA.123, 157, 160.

1

In the summer of 2020, Beighley retired, and Plaintiff was appointed as interim supervisor for the Firearms Section in Shreveport.  Plaintiff understood at the time of her appointment that the duties of a supervisor are to "oversee the section," to "keep the policies and procedures…up to date, to handle cases and case distribution, handle training, correspondence with agencies," and "direct contact with management, as well as casework."[6]  Unfortunately, Plaintiff was not able to satisfy her duties.  Performance issues that had previously been ignored were magnified, as Plaintiff created discord among other employees, delayed the progress of employees she was assigned to train, was routinely tardy to work, and was failing to complete her casework in a timely manner or in accordance with the policies and procedures of the Crime Lab.  For example, on one occasion, Plaintiff falsely stated to Jones that Phillip Stout, another certified Firearms Examiner who had been recently hired at the Crime Lab, had dyslexia, and Plaintiff attempted to discourage Jones from advancing Stout to solo casework.[7]  Additionally, in August 2020, while Plaintiff was serving as interim Firearms Section Supervisor, an annual audit revealed multiple policy and procedure violations, and an Incident Report was created.  The report revealed a Type III rating for the firearms/evidence room, which meant there were "[i]ssues [affecting] the quality of results or adversely affect[ing] the proper functioning of the laboratory," and that the

---

[6] ROA.175.
[7] ROA.125-127.

issues were systemic rather than isolated.[8]  It was noted that there were several gun boxes and evidence bags unsealed and that case work was not being timely completed.[9] A "Corrective Action Record" was completed by the Quality Manager, and Plaintiff was required to complete certain tasks by a designated completion date to cure the violations that were found.[10]  On September 1, 2020, Plaintiff signed the "Corrective Action Record" and acknowledged the actions needed to improve her performance and correct the deficiencies in the firearms/evidence room, but she failed to complete any of the tasks assigned to her.[11]

On September 17, 2020, a lab-wide meeting was held.  During the meeting, Plaintiff had a very negative attitude, made disrespectful comments to her co-employees, and was dismissive of any ideas or suggestions for changes in the firearms section.[12]  Following the meeting, Jones, Barnhill, and Dr. Pat Wojtkiewicz (collectively referred to as "the administration") agreed that it would be best for Plaintiff to step away from her supervisory duties and to appoint someone else as NIBIN Coordinator so that Plaintiff could focus solely on her casework.[13]

On September 21, 2020, the administration met with Plaintiff to discuss their concerns.  To their surprise, Plaintiff began the meeting by requesting to step down as

---

[8] ROA.147.
[9] ROA.127, 147, 158.
[10] ROA.127, 147-155, 158, 161.
[11] ROA.152-155, 158.
[12] ROA.127-128, 137.
[13] ROA.128, 139.

the Firearms Section Supervisor.  Jones advised Plaintiff that they agreed with her decision, stating that they wanted her to focus on casework and that they would also be reassigning the role of NIBIN Coordinator.  Jones told Plaintiff that they had not yet selected a new interim Section Supervisor or NIBIN Coordinator, and she was instructed not to speak to anyone in the Crime Lab or externally until the administration announced the changes.[14]

The following day, Jones learned that Plaintiff was upset about being removed as NIBIN Coordinator and had contacted the ATF against his instructions.[15]  Jones immediately sent a message to Plaintiff and requested that she meet with him before settling in for the day.  Jones advised Plaintiff that he was concerned because he believed they had a productive meeting and had reached common ground, but that she reached out to external clients against his direction.  Plaintiff initially denied contacting anyone with the ATF.  She admitted her communication to Jones only after being shown a text message she had exchanged with another employee, wherein she stated that she had been in contact with the ATF.[16]  Plaintiff was immediately sent home for insubordination and told that the administration would be considering disciplinary action.[17]

---

[14] ROA.128, 139, 162.
[15] ROA.129, 14
[16] ROA.130, 141, 162.
[17] ROA.130.

Jones, Barnhill, and Wojtkiewicz discussed the issues that had occurred with Plaintiff, including her insubordination and dishonesty, routine tardiness, employee morale, failure to complete casework, poor evidence handling, and disorganization. They determined the situation could not be remedied and agreed that termination was the only appropriate course of action.[18]  Plaintiff was notified that her employment was terminated effective September 25, 2020.[19]

Following her termination, Stout was appointed to serve as the interim Firearms Section Supervisor, the position from which Plaintiff had voluntarily resigned on September 21, 2020.  Sonya Nunnery, a female, was hired on November 2, 2020 as a Firearms Examiner and to serve as the NIBIN Coordinator.

On June 25, 2021, Plaintiff filed a Complaint seeking declaratory, injunctive, and monetary relief for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, codified at 42 U.S.C. § 2000e *et seq.*[20]  Plaintiff alleged that "she has been the victim of gender discrimination" and "that the adverse action taken against her was because of her complaint of gender discrimination."[21]

## II.    Motion for Summary Judgment

Defendant filed a motion for summary judgment seeking dismissal of all claims

---

[18] ROA.130, 142, 163.
[19] ROA.131, 143.
[20] ROA.8.
[21] ROA.15.

asserted by Plaintiff.[22]  Although Plaintiff's Complaint did not specifically allege a claim of hostile work environment under Title VII, the nature of the factual allegations set forth in Plaintiff's Complaint, which are also referred to in her brief, was such that a hostile work environment could be inferred.  Defendant sought dismissal of that claim because the time period for filing such a claim had expired, and because the alleged conduct was not sufficiently severe and pervasive to be actionable under Title VII.  Plaintiff conceded in her opposition to the Motion for Summary Judgment that she did not have a timely hostile work environment claim, but argued that the alleged conduct was relevant "for purposes of establishing the atmosphere of Plaintiff's gender discrimination claim."[23]

Defendant also sought dismissal of Plaintiff's gender-based discrimination claim on the grounds that Plaintiff could not establish a *prima facie* case of discrimination and that, even if she could satisfy that burden, Defendant had demonstrated a legitimate, non-discriminatory reason for her termination, and there was no evidence from which it could reasonably be inferred that Defendant's reasons were pretext for discrimination.  Lastly, Defendant sought dismissal of Plaintiff's retaliation claim because Plaintiff had not engaged in a "protected activity" prior to her termination, because there was not a causal connection between her alleged protected activity and

---

[22] ROA.100.
[23] ROA.274.

6

her termination, and because Defendant had demonstrated a legitimate, non-discriminatory reason for its action.

### III.    District Court's Ruling

On April 16, 2025, the District Court issued a Memorandum Ruling granting Defendant's Motion for Summary Judgment and dismissing Plaintiff's claims of gender-based discrimination and retaliation.[24]  With respect to her claim of gender-based discrimination, the District Court found that Plaintiff failed to establish the fourth element of her *prima facie* case, to-wit:  that she was replaced by someone outside her protected group or treated less favorably than other similarly situated employees outside her protected group.[25]  The District Court noted that while Plaintiff claimed she was "replaced" by Phillip Stout, a male, the evidence demonstrated that Stout assumed the position of Firearms Section Supervisor after Plaintiff voluntarily stepped down from that role, and that the adverse employment action at issue was her termination, not her voluntary resignation as supervisor.  At the time of Plaintiff's termination, her only roles were as a Firearms Examiner/Senior Scientist[26] and NIBIN Coordinator.  The District Court found no evidence that Plaintiff was replaced as a Senior Scientist,[27] and

---

[25] ROA.309.

[26] ROA.324; *and see,* ROA.234.

[27] The District Court was correct in its statement that there was no evidence that Plaintiff was replaced as a "Senior Scientist."  However, Plaintiff explained in her deposition that a "senior scientist is a title given to forensic scientists at the lab who have been there over so many years." (ROA.234).  She clarified that her title was "Firearms Examiner," but that she was also considered a

7

Plaintiff's replacement for NIBIN Coordinator was Sonya Nunnery, a white female who is not outside Plaintiff's protected group.[28]

The Court then examined whether Plaintiff was treated less favorably than similarly situated employees, and noted that Plaintiff pointed to Alex King, a male employee who worked in the Drug Chemistry Section at the Alexandria satellite lab, and Josh DeBord, a male employee who worked in the Drug Chemistry Section at the Shreveport lab. In 2020, King was fired by Michael Stelly, the Alexandria Laboratory Director, but later rehired by Barnhill. DeBord allegedly violated certain lab procedures and was transferred to the Toxicology Department. He then voluntarily resigned in 2022 after Plaintiff's termination.

Plaintiff claimed that, unlike King and DeBord, she was not given the opportunity to be rehired, to transfer, or to voluntarily resign. The Court explained that the phrase "similarly situated" is defined narrowly, and rejected Plaintiff's argument that King and DeBord are similarly situated comparators, as there was no evidence in the record showing that they shared the same work responsibilities and duties, and that Plaintiff was not even aware of the lab procedures that DeBord allegedly violated.[29] The District Court concluded that Plaintiff had failed to satisfy the fourth element of the *prima facie* case for gender-based discrimination and, therefore, did not address

---

senior scientist. (ROA.234). Sonya Nunnery, a female, was the only person hired to fill the role of Firearms Examiner after Plaintiff's termination.

[28] ROA.324.

[29] ROA.324-325.

whether NLCL had established a legitimate, non-discriminatory reason for terminating her employment.

As for Plaintiff's retaliation claim, the District Court agreed with Defendant and found there was no evidence to establish the first element of her *prima facie* case, to-wit: that she had participated in an activity protected by Title VII. Plaintiff claimed that the "protected activity" occurred on August 18, 2020, when she made an informal complaint to Jones about gender discrimination.[30] The District Court recognized that an informal complaint to an employer *may* constitute participation in a protected activity, but that a plaintiff may not "defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."[31] The District Court found "nothing in the summary judgment record to support White's contention that she engaged in a protected activity," and that her testimony of merely complaining to Jones "about gender discrimination," without any factual details or evidence to support her conclusory and unsubstantiated assertions, was insufficient to establish the first element of her *prima facie* case.

---

[30] ROA.328.
[31] ROA.329.

9

## SUMMARY OF THE ARGUMENT

The summary judgment evidence presents undisputed material facts. Plaintiff's conclusory allegations and unsubstantiated assertions in her pleadings are not summary judgment evidence and, therefore, are not enough to defeat summary judgment.

As set forth herein, the District Court correctly determined that Plaintiff failed to establish her *prima facie* case of gender-based discrimination because there is no evidence demonstrating that Plaintiff was replaced by a male or that she was treated less favorably than similarly situated comparators. The District Court also correctly determined that Plaintiff failed to establish her *prima facie* case of retaliation because there is no competent summary judgment evidence demonstrating that Plaintiff engaged in an activity protected by Title VII or that there was a causal connection between her alleged informal complaints and her termination. Furthermore, even if a genuine dispute of material fact exists as to whether Plaintiff could satisfy her *prima facie* case for either claim, Defendant articulated a legitimate, non-discriminatory reason for Plaintiff's termination, which is supported by the summary judgment record, and there is no evidence that Defendant's reasons are untrue or mere pretext for discrimination. Accordingly, the District Court's order granting Defendant's Motion for Summary Judgment and dismissing Plaintiff's claims, with prejudice, should be affirmed.

## ARGUMENT

### I.    Standard of Review

A district court's grant of summary judgment is reviewed *de novo*.  *E.E.O.C. v. LHC Group, Inc,* 773 F.3d 688, 694 (5th Cir. 2014).  This Court "must apply the same standard as the district court in the first instance," *Id., citing Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir. 2007), and "may affirm on any grounds supported by the record." *McGruder v. Will,* 204 F.3d 220, 222 (5th Cir. 2000).

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is proper when "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law."  The Court's inquiry, however, is limited to the summary judgment record.  *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1071 n.1 (5th Cir. 1994) (en banc). Pleadings are not part of the summary judgment record; rather, the nonmovant must go beyond the pleadings and designate specific facts in the record showing there is a genuine issue of trial.    *Id.* at 1075.    Neither "conclusory allegations" nor "unsubstantiated assertions" will suffice.  *Id.*

### III.    The District Court Correctly Dismissed Plaintiff's Gender-Based Discrimination Claim.

#### A.    Legal Standard[32]

---

[32] Plaintiff asserted claims of gender discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Louisiana Employment Discrimination Act, La. R.S. § 23:302 *et seq.* ("LEDA").  The same legal analysis applies to both statutes. *Nichols v. Lewis Grocer,* 138 F.3d 563, 566 (5th Cir. 1998) ("Courts have continually turned to federal employment discrimination law, including Title VII and the well-developed jurisprudence arising thereunder, for

11

Title VII of the Civil Rights Act prohibits an employer from discriminating against an employee "with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prevail on a claim for gender discrimination under Title VII, a plaintiff must first establish a *prima facie* case of discrimination. *Vasquez v. El Paso Cty. Comm. College Dist.,* 177 Fed.Appx. 422, 424 (5th Cir. 2006). A plaintiff may make a *prima facie* case for discrimination by proving (1) that she is a member of a protected class, (2) that she was qualified for the position, (3) that she suffered an adverse employment action, and (4) that either she was replaced by someone not in the protected class, or others similarly situated were treated more favorably. *Id.,* citing *Okoye v. Univ. of Tex. Houston Health Science Ctr.,* 245 F.3d 507, 512-13 (5th Cir. 2001). If the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant "to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Shahrashoob v. Texas A&M Univ.,* 125 F.4th 641, 653 (5th Cir. 2025). The burden "is one of production, not persuasion; it can involve no credibility assessment." *Alvarado v. Texas Rangers,* 492 F.3d 605, 611 (5th Cir. 2007). If the defendant can articulate a legitimate, nondiscriminatory reason, "the presumption of discrimination vanishes," and the burden shifts back to the plaintiff to show that the

---

interpretation of Louisiana's anti-discrimination statute."). Accordingly, Plaintiff's federal and state law claims are discussed together.

defendant's reasons are not true but a pretext for discrimination. *Okoye,* 245 F.2d at 512-13*, citing Meinecke v. H&R Block,* 66 F.3d 77, 83 (5th Cir. 1995).[33]

### B.    Plaintiff Failed to Establish a *Prima Facie* Case of Gender-Based Discrimination.

The issue examined by the District Court was whether Plaintiff could satisfy the fourth element of her *prima facie* case and establish (i) that she was replaced by someone outside of the protected class, or (ii) that she was treated differently than her similarly situated male comparators. The District Court correctly found that Plaintiff had failed to satisfy her burden, and dismissal of her gender-based discrimination claim was proper.

### ii.    Plaintiff Was Not Replaced by a Male.

Plaintiff claims she was replaced by Philip Stout, a male, and that no further analysis is necessary. However, to accept this argument, the Court would have to disregard the undisputed material fact that Plaintiff chose to voluntarily resign from her position as Firearms Section Supervisor prior to any adverse employment action. While it is true that Defendant would have demoted Plaintiff had she not chosen to voluntarily

---

[33] Plaintiff argues that the U.S. Supreme Court "called into question" the *McDonnell Douglas* framework in its decision rendered on June 5, 2025, in *Ames v. Ohio Dep't of Youth Servs.,* 605 U.S. 303, 145. S.Ct. 1540, 221 L.Ed.2d 929 (2025). However, the *Ames* decision, which was <u>unanimous,</u> applied the *McDonnell Douglas* framework to the plaintiff's reverse discrimination claims, rejecting only the "additional burden at step one" that had been adopted by the Sixth Circuit. Although Justice Thomas did note in his concurring opinion that he "would be willing to consider whether the *McDonnell Douglas* framework is a workable and useful evidentiary tool," this is not the case for that examination, and this Court remains bound to apply the *McDonnell Douglas* framework as developed by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

13

resign from the position, that fact is immaterial because Plaintiff is not claiming constructive discharge or demotion.[34]  Consequently, Plaintiff's voluntary resignation from the position of Firearms Section Supervisor is not an "adverse employment action" within the meaning of Title VII.  *See e.g., Gibbs v. City of Houston,* 2020 WL 7696093, *5 (S.D.Tex. 12/28/2020) (a voluntary transfer to a lower position does not qualify as an adverse employment action absent evidence of working conditions so intolerable that a person would be compelled to leave); *Sharp v. City of Houston,* 164 F.3d 923, 934 (5th Cir. 1999) (same); *and see, Tagliabue v. Orkin, LLC,* 794 Fed.Appx. 389, 394 (5th Cir. 2019) (an employee's voluntary retirement—outside a claim of constructive discharge—is generally not an adverse employment action").

The District Court correctly recognized that the only adverse employment action at issue in this case is Plaintiff's termination on September 22, 2020.  At the time of her termination, Plaintiff was serving only as a Firearms Examiner[35] and NIBIN Coordinator.  On November 2, 2020, Sonia Nunnery, a female, was hired to work as a Firearms Examiner and was assigned to serve as the NIBIN Coordinator.  There is no evidence that any other person was ever transferred or hired to fill either of those positions.  Consequently, Plaintiff failed to establish that she was replaced by someone

---

[34] Plaintiff also conceded in her deposition that she did not feel that Defendant's action in letting her step down from the position of Firearms Section Supervisor was retaliation.  (Depo., p.82).  Further, Plaintiff's testimony that her decision to step down was based on her belief that she was not "being taken seriously" is not the type of "intolerable working condition" that would lead to a constructive demotion.  *Id.* p.80.

[35] ROA.234; *and see, supra,* n.27.

14

outside of her protected class.

### ii. Plaintiff Was Not Treated Differently Than Similarly Situated Comparators.

A plaintiff who proffers a fellow employee as a similarly situated comparator must demonstrate that the employment actions at issue were taken "under nearly identical circumstances":

> The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis.

*Lee v. Kansas City Southern Ry. Co.,* 574 F.3d 253, 260 (5th Cir. 2009) (quotations and citations omitted).

Plaintiff alleges in her brief, for the first time, that Richard Beighley, a male supervisor who retired in the summer of 2020, is a similarly situated comparator. She argues "she was treated vastly different in that she was given more assignments than Beighley," that "Beighley was permitted to disregard certain tasks which Plaintiff was not," and that "Beighley was allowed to retire" while she was terminated.[36] But contrary

---

[36] Appellant's Original Brief, p.26-37.

to Plaintiff's assertion that they are "nearly exact comparators except for their gender,"[37] there is no evidence that Beighley had a history of violating lab procedures, failing to complete Corrective Actions, or being dishonest. In the absence of such evidence, Beighley cannot be considered a similarly situated comparator.

Plaintiff also argues that Alex King and Josh DeBord are similarly situated comparators, but Plaintiff acknowledges that both individuals worked in the Drug Chemistry Section, not the Firearms Section. That fact alone is sufficient for this Court to disregard King and DeBord as similarly situated comparators. *See Lee,* at 574 F.3d at 260 ("Employees with different supervisors, who work for different divisions of a company, or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated.").

Moreover, there is no evidence in the summary judgment record to establish that either King or DeBord had a history of violating lab policies and procedures similar to those violated by Plaintiff, that either had Incident Reports created due to their violations, that either failed to complete Corrective Actions, or that either had been dishonest. In fact, there is no evidence at all in the summary judgment record as to the reason King was initially terminated, as the allegations in Plaintiff's Complaint are not competent summary judgment evidence. Plaintiff also admitted that she never observed DeBord violate any lab procedures, and that she does not know what lab

---

[37] Appellant's Original Brief, p.26-37.

procedures were allegedly violated by him; she was simply "told by coworkers" that violations occurred.[38] Such "evidence" is not sufficient to satisfy Plaintiff's burden.

Additionally, even if Plaintiff's unsubstantiated assertions were enough to survive summary judgment, DeBord was cross-trained in the Drug Chemistry Section and Toxicology Section, and Defendant had the ability to transfer him to the Toxicology Section, where no lab violations had occurred.[39] Plaintiff was not cross-trained, thus transfer to another section would not have been an option for Plaintiff. Accordingly, the District Court correctly concluded that neither King nor DeBord was a similarly situated comparator, and that Plaintiff had failed to establish her *prima facie* case of gender-based discrimination.

### C.    Defendant Articulated a Legitimate, Non-Discriminatory Reason for Plaintiff's Termination, and There is No Evidence of Pretext.

Even if this Court were to find a genuine dispute of material fact concerning Plaintiff's ability to establish her *prima facie* case of gender-based discrimination, Defendant has demonstrated a legitimate, non-discriminatory reason for its actions. Specifically, Joey Jones was hired by the Crime Lab effective January 1, 2020, and he worked alongside System Director Jimmy Barnhill until taking over the position in the fall of 2020.[40] Jones' responsibilities after being hired were to "learn the inner workings

---

[38] ROA.241, 242.
[39] ROA.132.
[40] ROA.122.

of the Crime Lab, to evaluate employee performance, and to evaluate potential changes to, or implementation of, policies and procedures of the various departments."[41]  There were five (5) sections of the Crime Lab:  1) Drug Chemistry, 2) DNA, 3) Firearms, 4) Toxicology, and 5) Evidence.[42]  Richard Beighley was the Firearms Section Supervisor, responsible for overseeing the Firearms Section in the Shreveport, Alexandria, and West Monroe labs, and Plaintiff was the only certified Firearms Examiner in the Shreveport lab.[43]

Almost immediately, Jones had concerns about Plaintiff's work performance. Plaintiff was responsible for training new Firearms Examiners, but it appeared she was holding them back or keeping them from progressing.  In order to have objective criteria to evaluate the trainee's progress, Jones asked Plaintiff to prepare a written training program outlining the requirements that needed to be successfully completed by trainees.  Plaintiff was dismissive of the idea and failed to prepare a written curriculum.[44]

Jones also began monitoring employees' attendance and found Plaintiff to be routinely tardy.  Between May 4, 2020 and September 22, 2020, she reported late to work by a total of 592 minutes, or 9.87 hours.  Jones addressed attendance and tardiness with all employees in the summer of 2020, but Plaintiff was the only one who failed to

---

[41] ROA.122.
[42] ROA.123.
[43] ROA.123.
[44] ROA.124.

remedy the issue and who continued to show up tardy on a regular basis.[45]

When Beighley retired, Plaintiff was named Firearms Section Supervisor on an interim basis. While she was serving in that position, Jones asked Plaintiff to establish written policies and procedures for the Firearms Section. Jones offered to come in early or stay late to provide assistance and offered to provide additional compensation to Plaintiff for those hours, but Plaintiff made repeated excuses as to why she could not meet and failed to establish the written policies and procedures requested by Jones.[46] Jones' concerns are reflected in his notes of the July 28, 2020 meeting of the Firearms Section: "*I have concerns about her being supervisor material. She is easily flustered. Consistently makes excuses. I am not sure if I have ever heard a solution from her. She is unwilling to extend her workdays in order to create time – I have offered to create a mechanism to even pay or provide comp time. I offered to come in and work alongside her in the mornings or stay late. Still, she continues to show up after 0800 every day. Speaks of a plan but nothing is written down. Verbatim – 'you have to consider what the manager before me put in place.' I told her I understood but that is not an excuse for us. We are hired and have an opportunity to create change.*"[47]

On August 2, 2020, Philip Stout was hired to work as a Firearms Examiner, and Plaintiff was tasked with training Stout as to the specific policies and procedures of the Crime Lab. Jones once again asked Plaintiff to develop a written training program, but

---

[45] ROA.124.
[46] ROA.124, 125.
[47] ROA.125, 133.

she either refused or simply failed to do so.[48]

On August 18, 2020, in response to a discussion concerning old cases, Plaintiff sent an email to Alanna Brauer, the Crime Lab's Quality Manager, and Jones, indicating the status of various cases, including cases that would be administratively closed, or "ACN", by her. The following day, Brauer and Jones inspected the temporary firearms evidence room and found a number of gun boxes and evidence bags that were unsealed, in violation of Section 4.5 of the Lab's "Procedure for Evidence Management." Brauer and Jones also discovered cases that had not been touched by Plaintiff in over a year. On September 1, 2020, Brauer prepared an Incident Report based on their findings of poor evidence handling, poor evidence handling procedures, and disorganization.[49] A "Corrective Action Record" was also created to identify specific actions that needed to be taken by Plaintiff and a target completion date. Actions to be taken included the following:

| 09/14/2020 | Further define Section 4.5.3.2 of the Procedure for Evidence Management within the procedure manual. |
| 09/11/2020 | Organize temporary evidence room and store all evidence within lockers. |
| 09/11/2020 | Transfer evidence that has not had an analysis started to main Evidence room. |

None of the actions were ever completed by Plaintiff.[50]

---

[48] ROA.125.
[49] ROA.127, 157.
[50] ROA.158.

20

On September 18, 2020, a Firearms Section meeting was held but Jones was unable to attend. After the meeting, Brauer called him and advised that the meeting was "very dysfunctional and unproductive," that the meeting was "extremely negative," and that Plaintiff "had dominated the conversations, spoke over individuals, and was extremely vocal with her displeasure of any support guidance, or changes suggested by management in the meeting."[51] On September 20, 2020, Jones reviewed the video from the meeting and made the following notes:

> *I had the opportunity to review the meeting minutes and video from the firearms section meeting which occurred on 09/18/2020. While the structure and topics for discussion was satisfactory, I was very displeased with the negative tone and conduct of Carla White. She continually spoke over other individuals in the meeting, cutoff sentences spoken by fellow employees. At one point early in the meeting, Kendall Stracener (KS) was describing a unique bullet he had examined for the group, and he was immediately dismissed by CW because it was something she had seen before. At one point towards the end of the meeting, PW had to quiet down all attendees because Carla was continuing to talk over the other participants.[52]*

The following day, Jones met with Plaintiff, Barnhill, and Wojtkiewicz to discuss the administration's concerns over her attitude during the meeting, her tardiness, and her general negative attitude.[53] At the beginning of the meeting, Plaintiff surprised them by asking to step down as the Firearms Section Supervisor, and they agreed. Jones advised Plaintiff that they "wanted her to focus on casework production and not have to worry about the administrative duties as the section head and NIBIN coordinator,"

---

[51] ROA.127, 136.
[52] ROA.128, 137.
[53] ROA.128.

21

and explained that they would likely divide the two roles and have one person as the Section Supervisor and one person as NIBIN Coordinator.[54]  Jones advised that some time would be needed to determine who would fill the roles of Section Supervisor and NIBIN Coordinator, and asked Plaintiff "not to reach out to anyone within the section or externally" until the changes were made.[55]  The following day, Jones learned that Plaintiff had been in communications with ATF employees against his directive.[56]  When Jones confronted Plaintiff about her communications, she initially denied any communications with the ATF, but she later admitted to it after being shown a copy of her text message with a fellow employee.[57]

Jones, Barnhill, and Wojtkiewicz met to discuss the best course of action for Plaintiff.  After a lengthy discussion of their numerous concerns relating to Plaintiff's work performance, dishonesty, and the negative impact she had on employee morale, it was agreed that termination was the only appropriate course of action.[58]  Plaintiff was then terminated effective September 25, 2020.[59]

Although the District Court did not address this issue, the reasons articulated by Defendant, which were supported by the affidavits of Dr. Joey Jones, Alanna Brauer, and Dr. Pat Wojtkiewicz, and the exhibits attached thereto, were more than sufficient

---

[54] ROA.128, 139.
[55] ROA.128, 139.
[56] ROA.129.
[57] ROA.130, 140, 141.
[58] ROA.130, 142, 163.
[59] ROA.131, 143.

to demonstrate a legitimate, non-discriminatory reason for Plaintiff's termination. There is no evidence in the summary judgment record that any of the reasons supporting Plaintiff's termination are untrue, or that such reasons were merely a pretext for discrimination. Thus, even if Plaintiff had been able to establish her *prima facie* case of gender-based discrimination, summary judgment was proper based on Defendant's legitimate, non-discriminatory reason for termination and the absence of any evidence of pretext.

## IV.    The District Court Correctly Dismissed Plaintiff's Retaliation Claim.

### A.    Legal Standard

To establish a *prima facie* case of retaliation under Title VII, the plaintiff must prove (1) that she engaged in activity protected by the statute, (2) an adverse employment action occurred, and (3) a causal connection between the protected activity and the adverse employment action. *Haire v. Bd. of Sup'rs of La. State Univ. Agric. & Mech. Coll.,* 719 F.3d 356, 367 (5th Cir. 2013). "An employee has engaged in activity protected by Title VII if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing' under Title VII. *Long v. Eastfield College,* 88 F.3d 300, 304 (5th Cir. 1996), quoting 42 U.S.C. § 2000e-3(a).

If the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for its action.

23

*Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 408 (5th Cir. 1999). *Shahrashoob v. Texas A&M Univ.,* 125 F.4th 641, 653 (5th Cir. 2025).  If the defendant satisfies its burden, summary judgment is proper unless the plaintiff shows the proffered reason is pretextual.  *Id.*

### B.    Plaintiff Failed to Establish a *Prima Facie* Case of Retaliation.

Plaintiff's primary argument in support of her appeal is based on her disagreement with the District Court's finding that "White's alleged complaint to Jones …is only supported by her self-serving declaration," and that "[t]here is no other summary judgment evidence providing further proof that this complaint was made."[60] Plaintiff cites this Court's opinion in *Guzman v. Allstate Assurance Co.,* 18 F.4th 157, 160 (5th Cir. 2021), in which the court held that "self-serving affidavits and depositions may create fact issues even if not supported by the rest of the record."  However, Plaintiff ignores the subsequent text in *Guzman* in which this Court explained that while a self-serving affidavit may be competent summary judgment evidence, the affidavit must set out particularized facts.  "Self-serving affidavits and declarations, like all summary judgment evidence, must 'be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'"  *Id.* at 161, quoting Fed. R. Civ. P. 56(c)(4).  "And these facts must be particularized, not vague or conclusory."  *Id., citing Kariuki v. Tarango,* 709 F.3d 495,

---

[60] Appellant's Original Brief, p.24.

24

505 (5th Cir. 2013). This Court further explained that it has routinely held self-serving affidavits or depositions to be insufficient to create a fact issue when "their contents were either conclusory, vague, or not based on personal knowledge." *Id.*

In this case, Plaintiff's self-serving Declaration sets forth only the following with respect to her alleged "protected activity":

> 11. During late May or June 2020 (I am unsure of the exact date), a large group of coworkers met at Red River Brewery in Shreveport, Louisiana to celebrate Ms. Michelle Vrana Jackson obtaining her MBA. At this time, Michelle Vrana Jackson, Audra Williams Davis, Tiffany Davis, Alanna Brauer, and Joey Jones were present. There was a conversation amongst all of us where each female present took turns explaining to Mr. Joey Jones the *derogatory comments and inappropriate behavior* towards female employees by Mr. Jimmy Barnhill. *I specifically made my complaints of gender discrimination known in this meeting.* Mr. Jones was aware of the inappropriate behavior towards females at the North Louisiana Criminalistics Laboratory, yet he did nothing to address the issue.
>
> 12. A few months later, on August 18, 2020, I was called into a conference with Mr. Joey Jones to discuss old cases and Mr. Philip Stout's training. I explained the status of each case and the timing of each and the difficulties in training Mr. Philip Stout. *I also made a specific complaint of gender discrimination.* I followed this meeting up with an email to Ms. Alanna Brauer and Mr. Joey Jones detailing my case closure follow-up plan.[61]

Plaintiff's self-serving declaration failed to include particularized facts sufficient to satisfy her burden on summary judgment of showing that she engaged in a protected activity. Conclusory statements that she "made complaints of gender discrimination"

---

[61] ROA.291, 292 (emphasis added).

are not enough to satisfy her evidentiary burden. Moreover, although this Court has held that informal complaints may constitute "protected activity," "not all abstract grumblings or vague expressions of discontent are actionable as complaints." *Morris v. Texas Health & Human Servs. Comm.,* 2019 WL 3752762, *11 (S.D.Tex. 08/08/19) (cleaned up), citing *Hagan v. Echostar Satellite, LLC,* 529 F.3d 617, 626 (5th Cir 2008). Plaintiff's statements that she advised Jones about "the derogatory comments and inappropriate behavior towards female employees by Mr. Jimmy Barnhill," without more, cannot be considered anything other than "abstract grumblings or vague expressions of discontent," particularly in light of Plaintiff's testimony that Barnhill's derogatory comments and/or conduct ceased in 2017 after the Crime Lab moved into its new facility.[62] Thus, the District Court correctly found that Plaintiff failed to show that she had engaged in an activity protected by Title VII.

Further, even if this Court were to find a genuine dispute of material fact exists as to whether Plaintiff engaged in a "protected activity," there is no evidence in the summary judgment record to show that her alleged informal complaints were a "but for" cause of her termination, only Plaintiff's unsubstantiated assertions. *Long v. Eastfield Coll.,* 88 F.3d 300, 305 n.4 (5th Cir. 1996) ("The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision."). In the absence of such evidence, Plaintiff

---

[62] ROA.235.

failed to establish her *prima facie* case of retaliation, and the District Court correctly granted Defendant's Motion for Summary Judgment.

### C.    Defendant Articulated a Legitimate, Non-Discriminatory Reason for Plaintiff's Termination, and There is No Evidence of Pretext.

Even if this Court were to find that there is a genuine dispute of material fact concerning Plaintiff's ability to establish her *prima facie* case of retaliation, as set forth above, Defendant has demonstrated a legitimate, non-discriminatory reason for Plaintiff's termination. There is no evidence of pretext in the summary judgment record, and summary judgment was proper.

## CONCLUSION

For the reasons set forth herein, Defendant-Appellant prays that the District Court's ruling granting Defendant's Motion for Summary Judgment be AFFIRMED.

Respectfully submitted,

BY:  */s/ Nichole M. Buckle*

Nichole M. Buckle, LA Bar No. 32113
Carmouche, Bokenfohr, Buckle & Day, PLLC
6425 Youree Drive, Suite 380
Shreveport, Louisiana 71105
Phone: (318) 629-0014
Fax: (318) 404-1571
nikki@cbbd.law

*Attorney for Defendant-Appellee*

27

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the above and foregoing Original Brief of Defendant-Appellee was filed electronically with the Clerk of Court using the Court's CM/ECF system.  Notice of this filing will also be sent to all counsel via electronic mail using the Court's CM/ECF system.

Signed in Shreveport, Louisiana, on this 27th day of October, 2025.

By:  */s/ Nichole M. Buckle*
Counsel for Defendant-Appellee

## <u>CERTIFICATE OF COMPLIANCE</u>

I HEREBY CERTIFY that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because the brief contains 5,872 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I FURTHER CERTIFY that the brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font, excluding footnotes, which are prepared in 12-point Garamond font.

Signed in Shreveport, Louisiana, on this 27th day of October, 2025.

By: _/s/ Nichole M. Buckle_
Counsel for Defendant-Appellee